TEitohcock, C. J.,
dissenting. This case is of considerable importance to the parties concerned, but of much more importance on account of the principles involved. The complainant claims under a sale for taxes, made under the act of January 29, 1827, “ for the remission of penalties, and for the sale of lands for taxes.” This act has reference alone to lands which were delinquent for the non-payment of taxes previous to 1820. At the time of sale, this land, which is within the Virginia military district, had been appropriated, by entry and survey, in the name of David Ross. The legal tillo was in the United States.. After this sale, the defendant, as assignee of Ross, acquired the legal title by a patent from the President of the United States
Having thus acquired the legal title, he commenced an action of ejectment against the complainant, who set up his tax title, or attempted to set it up, in defense. This defense was overruled by the court, and the then plaintiff had judgment. The present bill was then filed, to enjoin this judgment, and to compel the defendant to release his legal title; the complainant claiming that, by the tax sale, and conveyance in pursuance thereof, all the interest of Ross, which was a perfect equitable interest, passed to, or became vested in, the purchaser, and that the defendant having received the patent as the assignee of Ross, is vested with the naked legal title, and should be considered as holding the same in trust for the equitable owner.
Two questions are properly raised in the case: 1. As to the legality of the tax sale ; and, 2. Admitting the sale to be legal as to the title which was acquired by the purchaser, whether the same was an equitable or legal title. As the case is decided upon this latter point, it is unnecessary to examine the first, and I shall therefore say nothing about it, any further than *this, that nothing in the argument of defendant’s counsel leads me to doubt, *480 in the least, tho correctness of the opinion expressed, when this case was last before the court.
Where the legal title to land sold for taxes is in an individual there can be no question as to the nature of the interest acquired by the purchaser. The title acquired by him is a fee-simple title, even although the land shall not have been taxed in the name of the former owner. It is only in case where the legal title, the fee of tho land, remains in the government of the United States, at the time of sale, and the individual owner has a mero equitable interest, that any difficulty can arise.
It is urged by counsel for defendant, that it would be a monstrous principle to establish that a court of equity will intoi’fere to aid a purchaser at tax sale, and the usual denunciations are uttered against tax titles. I am not aware that there is anything criminal, immoral, or wrong, in purchasing land at tax sales. If the rightful owner neglects or refuses to pay his taxes, and no other means of enforcing payment remains, than the sale of the property taxed, it would seem to me, the interest of the owner requires that bidding at the sale should be rather encouraged than frowned upon; for the greater the competition, the less loss will tho owner probably sustain. Where a tax title is defective, in consequence of errors committed by the officers intrusted with the assessment and collection of the tax, or in conducting the sale, it is true that a court of equity will not interfere to protect the title. Neither will a court of equity interfere at the suit of a purchaser at sheriff’s sale, to relieve against any irregularity in the execution, levy, or sale.
But if, by tho sale for taxes, or on execution, the entire interest of tho former owner of the land is transferred to the purchaser, and that interest is but an equitable interest, a different question is presented. We know, as a general principle, according to our law as it is now understood, an equitable interest of a judgment debtor in land, as such, can not bo sold on execution. It is certainly within the power of the general assembly, however, to enact that such equitable interest may *be sold on execution ; and after tho enactment of such a law, if such interest should be sold, would not a court of equity compel a conveyance from the holder of the naked legal title, to him who has acquired the equitable interest, although the right to that interest had been acquired by purchase at sheriff’s sale ? It seems to me there can be no doubt *481 that such decree would be made ; that a ease thus situated would be within the legitimate jurisdiction of a court of equity. Under such a provision of law, all the interest of the j udgment debtor would, by the sale, be vested in the purchaser, as completely and fully as if these interests had been transferred to him by the act of the judgment debtor himself.
Even without the enactment of such a law, I can easily imagine a case, where, it seems to me, it would be difficult for a court of equity to refuse its interference, to compel the holder of the naked legal title to transfer that title to a purchaser at sheriff’s sale. The bare possession constitutes a legal interest in land, which may, if continued a certain length of time, ripen into a legal right and title. A person in possession may defend in ejectment against any one who has not a paramount right of possession. And should he be ousted by having no paramount right, he may sustain an action of ejectment to recover the land, relying alone on his prior possession. This legal interest may be sold on execution at law. That is to say, an execution may be levied upon the land, of which a judgment debtor is in possession, and that land sold in pursuance of the levy. It is the land which must be sold; not the interest of the judgment debtor in that land, but the land itself. And it must be sold as land after an appraisal, according to the statute, and must be sold for not less than two-thirds the-appraised value. But, when the land is sold, all the interest of the judgment debtor therein is transferred to the purchaser, whether that interest be a mere actual possession, or any greater interest. Nothing but this interest, however, is transferred. A person having a paramount title is not affected by the sale. Now suppose the judgment debtor has not only the possession of the *land, but has an equitable interest in it—that, too, must pass to the purchaser. The purchaser having thus acquired an equity in the land, there is certainly no good reason why he should not have the aid of a court of equity to get in the legal title.
As in case of a sale upon execution, if -an equity passes, that equity may be enforced in the proper court; why may not the same principle be applied in the case of sales of land for taxes? Our laws authorize the taxing of land, to which tho legal title .is in the United States, provided that land has been appropriated to individual use, as may be done in the military district, by entry *482 and survey. After such entry and survey, nothing remains in the United States but the naked legal title. A perfect, equitable interest is vested in him who owns the survey, and the legal title is held in trust for him, his heirs and assigns. Now, if the tax law can with propriety be so construed, as that a sale for taxes shall be held to transfer to the purchaser all the interest of the former proprietor, and that interest is but an equitable interest, then the purchaser becomes the equitable owner of the land, and as such equitable owner, ought to have relief in chancery, as against him who shall subsequently, under the same survey, acquire that which still remains in the government—the naked legal title.
It may be presumed that considerations of this nature somewhat influenced this court in the opinion expressed and decision made, in the case of Niswanger v. Gwynne, 13 Ohio, 74. That was an action prosecuted by the plaintiff to recover the very land now in controversy, and Gwynne attempted to defend under his tax title. But the court overruled the defense, and entered judgment for the plaintiff. In overruling the defense, the court say: “The defendant has, at best, but an equitable title. If the proceedings in the tax sale were regular, his remedy is a bill in equity.” Such appears to have been the unanimous opinion of the court. The court, in the same case, hold that the purchaser at tax sale acquires no better title than was held by the former owner, at the time of sale. *True, the law of 1827, under which this land was sold (Chase’s Stat. 1560) provides that the deed to the tax-purchaser shall convey to him “a good and valid title to the land sold,” and that “ such deed shall be received, by all courts in this state, as good evidence of title to the purchaser or purchasers, his or their heir or heirs, assignee or assignees.” But the court, as I suppose, entertained the opinion that where the legal title to land was in the United States, that title could not be divested by a sale for taxes, under the law of the state. And this opinion is sustained by the decision of the Supreme Court of the United States, in the case of Wilcox v. Jackson, 13 Pet. 498, in which it was decided, that “ where a patent had not been issued for a part of the public lands, a state has no power to declare any title less than a patent valid, against the claim of the United States to the land, or against a title held under a patent granted by the United States.” And further, “ whenever the question in any court, state or federal, is, whether the title to property, which had belonged to the United States, had passed, *483 that question must be resolved by the laws of the United States. But whenever the property has passed, according to those laws, then the property, like all other in the state, is subject to state legislation, so far as that state legislation is consistent with the admission, that the title passed and vested according to the laws of the United States.”
In the case of Niswanger v. Gwynne, the court held, although such title did not vest in the tax-purchaser in that particular ease, as the statute seemed to contemplate, yet that all the title of the former owner did vest in him, which was but an equity, thus giving to the statute all the effect which could be given to it, consistent with our relations to the government of the United States.
This case, counsel for defendant contends, was erroneously decided. He insists that the purchaser at tax sale takes a legal estate ; that in such case there can be no such thing as a derivative title ; that there is no connection between the former owner and the purchaser. He says : “ The title of the tax-purchaser, *if any title passes to him, is, under this law, a legal title, and the error has been fallen into, by connecting the land with the title. The tax sale severs them forever. No covenant running with the land, nor warranty; no incident to the title, as a title, passes to the purchaser. He takes it by another right—by new and independent and paramount grant.” And in his argument at bar, he says that it is the creation of a new estate—a new fee.
It is rather bold ground to take, that a conveyance of land by the public officer, pursuant to a sale for taxes, conveys a title paramount to the title of the United States, where, until the sale, the legal title is in the United States. I am not sure that counsel intends this, though such, it seems to me, is a necessary consequence resulting from his argument.
But if, by the tax sale, a new estate—a new fee—is created, what becomes of the old estate—the old fee ? Does that still, continue to exist ? Are there two estates in fee in the same land ? Now, it may not be technically correct to say that the title of the former owner passes to the tax-purchaser. But I suppose, by the sale and conveyance, if both are regular, the title of the former owner ceases to be operative, or becomes extinct, and the tax-purchaser acquires a title to the property exactly equal to the title of the former owner, before the sale. If he does not occupy the same ground, or stand in his shoes, he has as good a title—a *484 title which must defeat that of the former owner, not so much because it is a paramount title, as because the title of the former owner has ceased to be operative. If not the same, it is a similar title.
Counsel insists that the former decisions of this court sustain him in the position, that if any title passed by the sale in the case under consideration, it was a legal title; and if such title did not pass, then there is no ground for equitable relief. In my opinion, every case heretofore decided, is diametrically opposed to the position assumed by counsel.
The first case referred to is the case of Holt’s Lessee v. Hemp-hill’s Heirs, 3 Ohio, 232.
*This was an action of ejectment, and the defendant relied upon a tax title, which, upon examination, was found to be defective, and of course of no avail, and the plaintiff had judgment. In commenting upon the case, the judge delivering the opinion of the court says: “But whatever may be the construction of the statutes referred to, as to the parties themselves, I do not hesitato to say, that after the survey of the entry had been recorded, it is not in the'power of the claimant to destroy the tax-lien of the state, or to avoid the effect of a sale regularly made, by the collector, for the non-payment of taxes.”
With this sentiment I entirely concur. After an entry has been regularly made and surveyed, if the land is subsequently taxed, and regularly sold for the non-payment of the taxes, I would not permit the holder of the survey to defeat the sale, by withdrawing the entry and making a new entry. But how relief should be given to the purchaser in such case, whether in law or chancery, is a different question, and does not appear to have been considered by the court.
The next case referred to is Stewart’s Lessee v. Parrish, 6 Ohio, 477.
This, like the former, was an action of ejectment, and the de* fendant relied upon a tax title.
The land in controversy was in the Sandusky reservation, and, in 1817, was entered under the laws then in force, and the first payment made. The balance of the purchase money not being paid, Stewart took the benefit of the laws then in force, and obtained an eight-years’ credit on the land.
In 1826 it was entered on the list for taxation, and the taxes of *485 1826-27 being unpaid, was sold for those taxes to one Strain, under whom the defendant claimed.
After the sale, and in 1830, Stewart completed the payment for the land, and received a patent, under which he claimed title.
It will be seen from this statement of the case, that this was United States land, which had been sold more than five years, *but not paid for at the time of the sale for taxes. The law under which this land was sold, I suppose, must have been the act of February 5, 1825, entitled “an act to amend the act defining the duties of county auditor.” Chase’s Stat. 1493. In this act, it is prescribed the deed of the auditor for lands sold for taxes, “ shall convey to the purchaser or purchasers a good title in law and equity to the land ” so sold.
The question raised to the court seems to have been as to whether the title, acquired by Stewart under his patent, should inure to the holder of the tax title.
The court say: “ The sale in 1827 transferred, at best, the title of Stewart, which he then held, and his title then was equitable only. His subsequent acquisition of the legal title did not inure to the benefit of that purchaser, for the sale by the public officer raised no estoppel against him, as if he had transferred with warranty. Admitting, then, for the present purposes, the legality of the sale, and that Stewart’s interest passed by it—those rights, being merely equitable, offer no defense to an action of ejectment by the holder of the legal title.”
I do not see how, by possibility, it can be claimed that this decision goes to sustain the position of defendant’s counsel. The court hold expressly that the sale for taxes in 1827, and a deed pursuant thereto, did not convey to the purchaser a legal title, because, at the time of the sale, the title to the land was in the United States. Still, the letter of the law was that the auditor’s deed should “ convey to the purchaser or purchasers a good title in law and equity.” But the court, in effect, admits that the purchaser does, by the purchase and deed, acquire an equity. Whether he can avail himself of this equity is not decided.
The next case in order is the case of Lessee of Wallace v. Seymour and Renick, 7 Ohio, 156, pt. 1. In this case the defendants claimed under a tax title, under a sale of the land after entry and survey, but before patent issued. The court decide, “that by a sale for taxes in the Virginia military district, surveyed but not *486 patented, the whole interest passes *fco the purchaser, and no right remains in the original holder. But if such holder, to defeat the sale for taxes, is permitted to withdraw the survey and make a new one, upon which he obtains a patent, such patent is not void. The purchaser holds the title subject to such rights as may have been acquired by the purchaser for taxes.” In deciding the case the court say: “Although the effect of the auditor’s deed is only to convey an equity where the former proprietor had no greater estate, yet this is only between the owner of the legal estate and the purchaser. The tax deed purports to convey a legal estate. It is made by authority of the state, and as to all the world except him who has the legal interest, would convey a legal title. Further, should the former proprietor afterward obtain his patent, although vested with the legal title, he must hold it in trust for the purchaser at tax sale.” If he holds in trust, a court of equity is the proper tribunal to enforce the trust.
The same matter was again brought before the court, by bill in chancery, at the suit of the defendants at law, against the plaintiff, and is reported in 8 Ohio, 539; and the court decreed that Wallace should release his legal interest to the complainants, Renick and the heirs of Seymour. The law under which the land was sold, which was the subject matter of controversy, was the act of January 30,1822, entitled “an act providing for the remission of penalties, and for the sale of lands for taxes ” (Chase’s Stat. 1216), commonly called the judgment law; and it is provided, that the deed to be executed by the auditor “ shall convey to the purchaser all the title, either in law or equity, which the owner had in the lands,” etc.
Surely, neither of these cases militate against the decision of this court, in the case of Niswanger v. G-wynne, above referred to, but directly sustain that decision.
The case next in order is the case of Douglas v. Dangerfield, 10 Ohio, 152. It is claimed that, in this case, there was an actual decision of the court; that the purchaser at tax sale, where the land has been entered and surveyed, but not patented, acquires a legal title. The sale in that case was a *salq of land, delinquent for the non-payment of taxes, under the general law then in force—not a sale under the act of 1827. Nothing was, in fact, decided by the court as to the title which a purchaser at tax sale acquires, where the equitable interest is in an individual and t^a *487 legal title in the government. It was not necessary to act upon that question, nor did the court act upon it. As counsel for defendant relies so entirely upon this case as an authority, it may be proper to examine more particularly what it was, and what was actually decided.
At the tax sales in December, 1829, Douglas purchased the land in controversy, which had been 'listed in two several parcels—one in the name of Theodoric Bland, and the other in the name of William Dangerfield; but the duplicate did not show which part of the survey, as to its locality, was listed in the names of the respective owners!
After this sale, the land was transferred to Douglas, upon the auditor’s books, and taxed to him as an entire tract, but the taxes were not paid, cither in 1830 or 1831; and in December, 1831, the land was again offered for sale, for the-taxes of the two last-named years. At this sale, the land was purchased by the agent of Douglas, for his benefit, and the certificate of purchase was transferred to him. In March, 1833, the auditor of the county, by deed duly executed, again convoyed the land to Douglas, in pursuance of this latter sale. There was evidence in the case tending to prove that after the first sale, Douglas took possession of the land, and exercised acts of ownership over it. In April, 1833, the land was patented to Dangerfield, who claimed to be the assignee of Bland, the original warrant-holder. But before the patent was issued, the original entry was withdrawn, and a new entry and survey made upon the same land.
Douglas claimed that, by his purchase,-he acquired a.perfect equity, and that Dangerfield, having subsequently acquired the legal title, should be adjudged to hold the same in trust for him.
The case turned upon defects in the title of Douglas. So far *as the first sale was concerned, the land appeared to have been improperly listed and taxed, and of course, by his purchase at that sale, he acquired nothing. He however took possession of the land, exercising acts of ownership over it. It was transferred to him, and listed in his name as an entire tract. He did not pay the taxes, however, but suffered the land to become delinquent for the non-payment. It was sold for taxes, and purchased in for Douglas, by his agent. Under these circumstances, the court were of opinion that, by this second purchase, he acquired no additional interest in the land, and decided, that “ one *488 in possession of land claiming title, and in whose name it is listed for taxation, acquires no additional interest, by suffering the land to be sold for taxes, and purchasing the same himself.” The case went out of court, because the complainant did not show in himself any title, legal or equitable.
It is true that, in writing the opinion, I commented upon the question, as to the nature of the title which a purchaser at a tax sale wo^gld acquire, where the legal title to the land was in the government at the time of sale, and only an equity in the former proprietor; suggesting that the subject was surrounded with difficulties, and that at some future period there might be trouble with respect to it. But I was particularly cautious to have it understood, that what was said upon this subject, was not in consequence of the action of the court, and concluded upon this matter by saying : “ But, in this case, it is unnecessary for us to trouble ourselves upon this question. When it does arise,” (it had not in that case arisen,) “ it must be a purely legal question, to be settled by a court of law.” And then went on to state the reasons why the complainant’s case could not be sustained. It would have been better to have said nothing upon a subject upon which the court had not acted ; but I still think that, under all the circumstances, no one could have been led astray by what was said.
I said, the time would come when the questions upon this class of cases must be settled, and the proper tribunal to settle *them, would be a court of law. That time has arrived and passed by. The whole subject was before the court, in the case of Niswanger v. Gwynne, 13 Ohio, 74. The decision was as before stated. Gwynne was told that, by his purchase at tax sale, his grantor acquired only an equitable interest; that in a court of law he could have no relief; but must resort to a court of chancery. Had I been a member of the court at the time this decision was made, I can not now say what my opinion would have been. Probably I should not have dissented from the decision made.
In consequence o.f this decision, Gwynne resorted to a court of chancery, and filed the bill now before us. It was met by a demurrer. After full hearing before the whole court, at the December term, 1846, the demurrer was overruled, and the defendant had leave to answer. By this decision, Gwynne was, in effect, told that he was in the proper court, and if the proceedings, in conse *489 quence of which ho claimed title, were correct and in accordance with law, he would be entitled to relief. 15 Ohio, 367.
The defendant answered, and the case was again before the court, at the December term, 1849, as it is now, upon bill, answer, exhibits, and testimony, and the court again held, that the complainant was entitled to the relief sought, and decreed accordingly. Subsequently, however, a rehearing was ordered. 18 Ohio, 400.
Another case may be referred to; that is the case of Millikin et al. v. L. Stalling, Jr., which was decided in this court at the December term, 1847. 16 Ohio, 61. This was an action of ejectment, •and the defendants in the court below—plaintiffs in error before this court—defended under a tax title. The land had been sold for taxes, but at the time of sale the legal title was in the government, although a patent had been subsequently issued to the plaintiff below, defendant in error in this court. The court below overruled the defense of the defendant, and rendered a judgment for the plaintiff. Upon hearing the ease, this court affirmed the judgment, expressly ^deciding, that by a tax sale under such ■circumstances, the purchaser did not acquire a legal title which could avail him in ejectment, but recognizing the principle that he acquired the legal interest.
From this hasty review, it appears, in all the cases referred to, commencing with the case of Stewart’s Lessee v. Parrish, decided in 1834 (6 Ohio, 477), and coming down to 1849, this court has uniformly held directly the reverse of what is claimed by defendant’s counsel. It has been uniformly decided that the purchaser at tax sale, where the legal title to the land was in the government, did not acquire a legal title, but that he did acquire an interest equal to that of the former individual proprietor, although that interest was but an equity; and all these cases were decided without a dissenting opinion. The only excepted case is the case of Douglas v. Dangerfield, which was decided upon another point. In one case the court, acting as a court of chancery, decreed in favor of the tax-purchaser, where the purchase was made under such circumstances, against him who subsequently 'acquired the legal interest.
Now, it would seem to me that if any question could ever be considered as settled, by a uniform course of decisions, the questions arising in this case ought so to be considered. But the decision now made by a majority of the court overrules all these *490 former decisions, and establishes the principle, that where lands are sold for taxes, if the sale is regular, the purchaser acquires perfect legal title, although that title is in the government of the United States, at the time of sale; and the case of Ross v. Borland (1 Pot. 655), is cited to show that, in similar cases, the court, of the United States will regard and be controlled by state legislation, and the practice of state courts upon similar subjects. That was an action of ejectment. Both parties claimed title under the United States. The plaintiff in ejectment held the junior, the defendant the elder patent, although the entry under which the junior patent issued, was the elder entry. According to our practico, the *h older of the elder patent would have been held to be the trustee of the holder of the junior patent, which ■was based upon the oldest entry, and would have been decreed to convey accordingly; at law, the elder patent must have prevailed. But the court in Mississippi suffered the question to be settled at law, and the Supreme Court of the United States affirmed this judgment. It will be seen that no title remained in the United States. The controversy was between two citizens, claiming title to the same land; and, inasmuch as the rights of the United States were not interfered with, the courts of the state were allowed to dispose of the controversy in accordance with their ideas of propriety. This case is in accordance with the principles laid down in 13 Peters, before referred to.
It is desirable that the decisions of the same court should be uniform, as far as the rules of law and equity allow. Questions frequently arise in the course of litigation, the law arising upon which is doubtful; and perhaps, so far as the rights of parties litigant are concerned, it is a matter of little consequence how they are decided. But when once decided, public policy and private interest require that the decision should not be changed for slight or trivial reasons. Cases are frequently, brought into this court for the express purpose of settling a controverted point of law. The case is decided, and the point of law is supposed to be settled. But what is the use of this, provided, at the next term of the court, or at any subsequent term, the decision is to be overruled, and an entirely different and opposite rule is declared ? Decisions of courts do not constitute the law of the land, but they are generally considered as evidence of what the law is; and one great object of publishing reports of cases is, to produce uni *491 formity of decision. There is a common complaint of the uncertainty of the law. The law itself is certain enough; the uncertainty arises from the action of courts. And certainly nothing can contribute to this uncertainty more than the contradictory decisions of the same judicial tribunal.
I do not claim that every decision of a court must be *considered the law, as to the particular subject of litigation during all succeeding time, by the same tribunal. It may be that an important principle of law has been violated in the decision of a particular case. If it is followed in subsequent cases, great and essential injury may be done to parties litigant. In such case, I hold that the error should be corrected at the earliest possible opportunity.
But where there can be no change of the final settlement of the rights of parties, by a change of decision, no change should be made. In the case now.decided, the only question is, as to the proper forum to grant relief. We all agree that if the sale for taxes was regular, the complainant acquired an interest, either leg-al or equitable. When the parties were before this court, as a court of law, he was told he was not before the proper tribunal; that he must resort to the equity side of the court. He has done so; and now he is told, by the same court, that this is all wrong; he can not have relief on the equity side of the court, he must resort to' the court as a court of law. In this particular case, perhaps no injury can be done, because the suit pending in the court of law was an action of ejectment, in which a single judgment is not conclusive. But if the case had been of that character where the judgment would have been conclusive of the rights of the parties in that tribunal, then this change of decision would deprive the complainant of an interest which it is admitted he is entitled to. Judgment was entered against him in a court of law, now a decree is made against him in a court of chancery.
There is another circumstance connected with this case which has great influence upon my mind, to induce me to add here to the decisions heretofore made upon this subject. The legal title to the land sold was in the United States, and the defendant now holds the title which was then in the United States. It is, to say the least of it, extremely doubtful whether the United States can be divested of the legal title to lands under any law of the state. Indeed, the Supreme Court have decided, in the case in 13 Peters, *492 before referred to, that *they can not be so divested of title, and, by that decision, the same principle is applied to the patentee of the land, under the United States. By the decision now made, the legal title by a sale for taxes, if the sale is regular, is held to be in the purchaser for taxes, although the legal title at the time •of sale was in the United States. Ry this decision, this court is brought in direct conflict with the court of the United States, and .that, too, upon a subject in which that court has undoubted jurisdiction. This state of things, it seems to me, should be avoided at all events; especially should it be avoided, where it can be done without the sacrifice of any principle, and without injury to any private rights.
Such are some of the considerations which have heretofore influenced this court while acting upon this subject. No conflict can grow out of former decisions. The title of the United States is recognized, and the purchaser for taxes is not deprived of his rights. He acquires an equitable interest, and when the title passes from the United States to the patentee, he will hold the land, as did the United States, in trust for him who owns the ■ equitable interest. The United States had but the naked legal title, and this alone passed by the patent.
It is unnecessary to say anything further, and perhaps I have already said too much, but it seemed to me proper to state at length the principal reasons which induced me to dissent from the decision made by a majority of the court.